No. 7059.

BROADWAY SAVINGS BANK OF ST. LOUIS VS. EDWARD VORSTER ET AL.

Where an agent, clothed with power to accept bills, has accepted a bill in the name of his principal, the latter can not escape liability as acceptor, on the ground that he had no interest in the transaction in which the bill was given, and that he had received no consideration, unless he proves that his agent, to the knowledge of the holder of the bill, has abused his power.

APPEAL from the Third District Court, parish of Orleans. *Monroe,* J.

*Braughn, Buck & Dinkelspiel* for plaintiff and appellee.

*Sam. R. & C. L. Walker* for defendants and appellants.

The opinion of the court was delivered by

MARR, J. Separate suits were brought and separate judgments

588       SUPREME COURT OF LOUISIANA,

Broadway Savings Bank of St. Louis vs. Vorster.

were rendered against appellant in favor of the Broadway Savings Bank of St. Louis, on two bills of exchange, drawn by A. W. Schulenburg, to the order of I. B. Kreiger, Jr., cashier, dated at St. Louis; one, twenty-fifth July, 1877, for two thousand dollars, the other thirtieth August, 1877, for twenty-five hundred dollars; with exchange on New York, addressed to Edward Vorster, at New Orleans, accepted by writing across the face " p. p. Edward Vorster, I. Linden Schmidt."

The defense is want of authority in Linden Schmidt, and want of consideration; and by agreement, one appeal was taken, and one bond given, and both cases brought up as one.

Interrogatories on facts and articles were propounded to Vorster; and he answered that " Linden Schmidt did hold my power of attorney for the transaction of my business, at the date of the draft sued on, which procuration had been executed in contemplation of my absence from this city in the year 1876; the same was in writing, and is now on file in the New Orleans National Bank."

He submits to the consideration of the court whether this power authorized Linden Schmidt to use his name for accepting bills of third parties, " or the draft sued on, in which I had no interest and for which there was no consideration in my behalf."

He also states that he is advised by his counsel that he is neither morally nor legally bound for the payment, " the said draft being solely for a transaction for the benefit of A. W. Schulenburg alone, in which I was not interested, and for which I had received no consideration."

The power of attorney was produced on subpœna *duces tecum*, directed to the president of the New Orleans National Bank, in which it had been deposited, for the reason, no doubt, that Vorster kept his account in that bank. It is dated twenty-third March, 1876, and is in the usual form, that is, it is such a power as the merchants of New Orleans are in the habit of giving to their confidential clerks. It gives authority to the agent, among other things, " to make and indorse promissory notes in the name of the constituent, and to draw, indorse, and accept bills of exchange."

There is nothing that Vorster could have done, in person, that Linden Schmidt could not have done, under the power, in and about the business, contracts, and property of Vorster. No doubt Vorster understood and intended, and all other business men would so understand, that this power was not to be used for any business or purposes of Linden Schmidt, but only for the business of Vorster.

It is by no means unusual, it is of daily occurrence, for merchants at St. Louis to draw bill on their correspondents, merchants of New Orleans. Indeed, the commercial relations between the two cities make this a necessity. A merchant at St. Louis draws a bill on a merchant at

New Orleans, to the order of the cashier of a bank at St. Louis. It is sent forward to be presented for acceptance; and it is accepted by a person who has ample and express power to do that precise thing. A month later, the same merchant at St. Louis draws in favor of the cashier of the same bank, on the same merchant at New Orleans; and, like the first, it is sent forward, and accepted in the same manner; and the drawer gets the money from the bank, less the discount.

The drawee does not set up any want of consideration as between the drawer and the payee; on the contrary, in his answer to the interrogatories on facts and articles, he says the drafts were solely for the benefit of the drawer, which can mean nothing else than that the drawer received from the payee sufficient consideration. Indeed, this would be presumed. What he complains of is, that he was not interested, and received no consideration.

It frequently happens that bills are drawn and accepted solely for the benefit of the drawer; it also is not unusual for merchants living in different cities to establish mutual credits, with the understanding and expectation that shipments will be made by the one to the other, by which both will be benefited; and they agree to accept the one for the other, as interest or convenience may require, and indorsements and acceptances, purely for accommodation, are very common.

It will be observed that defendant does not state that Schulenburg had no authority to draw; nor does he charge that Linden Schmidt abused his confidence, and availed himself of the power for his own benefit or purposes. He deals candidly with the affair; admits the giving of the power to Linden Schmidt, and rests his case upon the ground that he was not interested in the transaction for which the drafts were given, and that he had received no consideration.

The question of consideration, as between the drawer and the drawee, is one with which the payee, or other holder before maturity, has nothing to do; and there could be no such thing as public confidence, no safety in dealing with commercial paper, if the holder were compelled to inquire into the relations or state of accounts between the drawer and the drawee.

The drawing of the two bills, in this case, at an interval of something over a month, and the acceptance by Linden Schmidt of both, create a strong presumption that Schulenburg did not draw without authority; and this presumption is by no means impaired by the entire failure of Vorster to suggest that the drawing was not authorized. The inference is legitimate, entirely fair, that these bills were drawn in view of dealings between the parties by which Vorster expected to be in funds to meet them at maturity; that this expectation was not realized; and that Vorster did not, therefore, receive any consideration, or the consideration which he had expected and relied upon.

But there is no occasion to resort to presumptions. Plaintiff holds two bills, drawn on Vorster, and accepted in his name by a person to whom Vorster had given written and express authority " to draw, indorse, and accept bills of exchange;" and Vorster is bound unless he can show that his agent, to the knowledge of the holder, abused his power. Those who give such extraordinary powers incur the risk of loss by the imprudence or by the fraud of the agent; but they must attribute this only to their own misfortune, or want of proper caution in selecting the agent to be intrusted with such large powers. Neither fraud nor imprudence is imputed to Linden Schmidt, nor is there any allegation in the answer of defendant, nor in his answer to the interrogatories on facts and articles, which tends to relieve him of the obligations of acceptor, resulting from the act of his duly authorized agent.

The fact that the words "with exchange on New York" were used in the bills does not affect their character as bills of exchange, as argued by appellants' counsel, but it tends to show that there was some agreement or understanding between Schulenburg and Vorster, by which Vorster was to pay at the maturity of the first bill such sum as would purchase exchange on New York for $2000; and at the maturity of the second bill such sum as would purchase like exchange for $2500.

The judgments appealed from are therefore affirmed with costs.